# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:16-cv-00132-MR-DLH

| | |
|---|---|
| TRIBAL CASINO GAMING ENTERPRISE, ) ) ) Plaintiff, ) ) vs. ) ) W.G. YATES & SONS ) CONSTRUCTION COMPANY, ) RENTENBACK CONSTRUCTORS ) INCORPORATED, and METROMONT ) CORPORATION, ) ) Defendants. ) _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on two motions. The Plaintiff, Tribal Casino Gaming Enterprise ("TCGE"), has filed a Motion to Stay Pending Arbitration and to Compel Arbitration [Doc. 29], as well as a Motion to Stay Pending Deadlines. [Docs. 31]. Defendant W.G. Yates & Sons Construction Company ("Yates") and Defendant Rentenback Constructors Incorporated ("RCI") jointly have filed a Memorandum in Opposition to TCGE's Motion to Stay Pending Arbitration and to Compel Arbitration. [Doc. 33]. Likewise, Defendant Metromont Corporation ("Metromont") has filed a Memorandum in Opposition to TCGE's said motion. [Doc. 34].

This is the second lawsuit filed in this Court by the Plaintiff against these Defendants seeking to recover damages for what Plaintiff contends were defects in the construction of two parking decks. By Order entered July 1, 2016, the Court stayed the previous lawsuit and directed the parties to arbitration. TCGE v. W.G. Yates, et al., File No. 1:16-cv-00030, Doc. 58 (herein "First Lawsuit"). For the reasons that follow, the Court will also stay this proceeding and direct the parties to arbitration.

## BACKGROUND

On April 3, 2008, TCGE entered into a construction contract with Yates and RCI (as joint general contractors), inter alia, to expand the facilities at Harrah's Cherokee Casino in Cherokee, North Carolina. [Doc. 1 at 3]. This project included the construction of two separate parking decks. One parking deck was an 8-level, 2,300+ space parking garage to be used by patrons, guests, and employees of Harrah's Cherokee Casino (the "Casino Deck"). The other deck was a 6-level, 1,200 space parking garage connected to the Harrah's Cherokee Hotel and intended for use by hotel guests (the "Hotel Deck"). [Id.]. Yates/RCI, in turn, hired Metromont pursuant to a subcontract to build the parking decks. [Id.].

Following the construction of the parking decks, TCGE alleges that certain components of them failed. [Id. at 4]. On February 19, 2015, TCGE

2

reported that a ramp in the smaller Hotel Deck had partially collapsed. The partial collapse in the Hotel Deck is the subject of Plaintiff's First Lawsuit filed on February 9, 2016. [First Lawsuit, File No. 1:16-cv-00030, Doc. 1]. On April 15, 2016, TCGE reported that a ramp in the larger Casino Deck had partially collapsed. [Doc. 33 at 3]. The partial collapse in the Casino Deck is the subject of this lawsuit filed by TCGE on May 10, 2016. [Doc. 1].

In this matter, TCGE is seeking damages based on claims for breach of contract, breach of warranty, negligence, gross negligence, breach of implied warranty of fitness, and unfair and deceptive trade practices. [Doc. 1 at 7-16]. Yates and RCI filed a joint Answer admitting that they were the general contractors for TCGE's parking decks but denying any liability for the collapse within the Casino Deck. [Doc. 24]. Similarly, Metromont admitted in its Answer that it entered into a subcontract with Yates/RCI to provide precast concrete materials and construction services for the construction of TCGE's parking decks but denying any liability for the collapse within the Casino Deck. [Doc. 22].

The present dispute pertains to the arbitration clause contained in the general contract[1] executed by and between TCGE and Yates/RCI. This

---

[1] Article 1.0 of the *subcontract* executed by Metromont has an adoption clause which provides, in pertinent part, that Metromont "shall assume toward [Yates/RCI] all the

3

arbitration clause, found at section 26.5.B of the general contract, provides in full as follows:

> Arbitration. Any controversy or claim arising out of or relating to this Agreement shall, except to the extent modified by the mutual agreement of the parties be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the arbitrators may be entered in a court subject to the provisions of this Section and Section 26.4.2.(ii) above. Either party may specify and require that any arbitrator selected shall be an attorney licensed to practice law in the North Carolina or a United States District Court. If more than one arbitrator is used, Owner shall select one, the Contractor shall select one, and the two so selected shall select a third. The party desiring to submit any matter to arbitration under this Section shall do so by written notice to the other party and said notice shall set forth the item(s) to be arbitrated, such party's position as to such items and such party's choice of arbitrator. The party receiving said arbitration notice shall have fifteen (15) days after receipt of such notice to designate one of the remaining two arbitrators by written notice to the first party and to set forth in writing its position as to such terms. The two chosen arbitrators, within fifteen (15) days after designation, shall select the third arbitrator. The arbitration panel shall be required to render a decision within thirty (30) days after being notified of their selection. The fees and expenses of the arbitration panel shall be paid by the non-prevailing party unless the arbitrators determine there is no prevailing party, in which case the parties shall each pay one-half (1/2) of such expenses. In all arbitration proceedings submitted to the arbitration panel, the panel shall be required to agree upon and approve the substantive position advocated by either Owner or Contractor with respect to each disputed item. Any decision rendered by the panel that does not reflect a substantive position advocated by either Owner or Contractor shall be beyond the scope of authority granted to the panel and shall be void. The arbitrators shall be

---

obligations and responsibilities which [Yates/RCI], by the Prime Contract, assumes toward [TCGE]." [Doc. 29-2 at 4].

persons familiar, by profession or experience, with the issue(s) In controversy. The awards of any arbitration shall be governed by Title 9 of the United States Code except as may be changed or limited by the provisions of this Agreement. The parties agree that binding arbitration shall be the sole remedy as to financial disputes arising out of this Agreement and that disputes requiring injunctive or declaratory relief shall be pursued as provided in this Agreement unless the parties mutually agree otherwise.

The parties agree that the only grounds for appeal of any arbitration award procured pursuant to this Article 26 shall be:

A. where the award was procured by corruption, fraud or undue means;
B. where there was evident partiality or corruption in the arbitrators or any of them;
C. where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or any other misbehavior by which the rights of any party have been prejudiced;
D. where the arbitrators exceeded their powers or imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made; and/or
E. where an award is vacated and the time within which this Agreement required an award to be made has not expired, the Court may, in its discretion direct a rehearing by the arbitrators.

The parties agree that an arbitration award appealed pursuant to this Article 26 shall not be subject to review or modification by the Court, but shall be (i) affirmed strictly as rendered by the arbitrators, or (ii) vacated.  Notwithstanding any laws, rules or ordinances that might allow for a longer time period for appeal the parties agree that an arbitration award rendered pursuant to this Article 26 shall be deemed final for enforcing and executing an arbitration award as authorized herein if such appeal has not been filed with the Court within thirty (30) calendar days of the date of the arbitration panel's written order issuing an arbitration award.

[Doc. 29-1 at 4-5].

On February 9, 2016, TCGE invoked this arbitration clause, filing a Demand for Arbitration with the American Arbitration Association ("AAA"), and asserted a claim based upon the partial collapse in the Hotel Deck. [First Lawsuit, File No. 1:16-cv-00030, Doc. 31-3]. On May 17, 2016, TCGE filed its First Amended Demand with the AAA and designated its arbitrator according to the provisions of the arbitration clause. [Id., Doc. 50 at 7-8]. On July 27, 2016, TCGE filed its Second Amended Demand which included its Casino Deck claim thus consolidating its claims for both parking decks in the same arbitration proceeding. [Doc. 30-3].

The Defendants in the First Lawsuit filed motions challenging the arbitration clause and TCGE filed a motion seeking to enforce it. [First Lawsuit, File No. 1:16-cv-00030, Docs. 30; 32; 43; 45; 47; 49]. The Court conducted a hearing in the First Lawsuit on June 21, 2016, regarding these motions. On July 1, 2016, the Court entered an Order in the First Lawsuit upholding the applicability of the arbitration clause to the parties, staying the First Lawsuit, and directing the parties to arbitration. [Id., Doc. 58]. In its present motion in this matter, TCGE seeks to stay this action and compel the Defendants into arbitration regarding its Casino Deck claim so that it may be resolved in the same proceeding with its Hotel Deck claim. [Doc. 29 at 6].

**DISCUSSION**

The parties take the same positions in this matter with regard to the arbitration clause as they did in the First Lawsuit. TCGE contends that the arbitration clause is enforceable against Yates/RCI, and that based thereon the Federal Arbitration Act and corresponding North Carolina Revised Uniform Arbitration Act require that the Court compel arbitration and stay this action pending the completion thereof. Further, TCGE contends that Metromont may be compelled to arbitrate the claims against it because Metromont's subcontract with Yates/RCI contains an adoption clause subjecting Metromont to any obligations Yates/RCI has to TCGE pursuant to the general contract. [Doc. 29].

Yates/RCI, while not contesting the validity of the general contract, challenge the applicability and enforceability of the arbitration clause. Yates/RCI contend that TCGE's claim falls outside the scope of the arbitration clause, or alternatively, that the arbitration clause itself is unenforceable due to its unreasonably short time period within which the arbitration panel must render a decision. [Doc. 33]. Metromont, in turn, argues that the arbitration clause is unenforceable as its timeframe for resolving this dispute, together with its other mandatory provisions, violates the constitutional guarantees of due process and fundamental fairness.

7

Further, Metromont argues that the subcontract's adoption clause provides TCGE no legal basis to bring Metromont into any arbitration proceeding commenced against Yates/RCI. [Doc. 34].

All of these arguments presented by the Defendants opposing TCGE's motion to stay and compel are the same ones the Court entertained in the First Lawsuit. For the reasons given in its Order filed in the First Lawsuit on July 1, 2016, the Court rejects the Defendants' same arguments made in this matter.

This does not end the discussion of TCGE's motion to stay and compel, however, as Metromont has raised an additional argument not put forth in the First Lawsuit. In this matter, Metromont makes the added assertion that the 30-day period within which the arbitrators must make an award, as contained in the arbitration clause, is absolute and jurisdictional. [Doc. 34 at 8]. Further, because the arbitration panel did not formally extend the deadline for such decision period before the requisite 30-day time limit expired, according to Metromont, it contends the arbitration panel no longer has jurisdiction to render an award. [Id.]. Metromont misapprehends the concept of jurisdiction. In particular, Metromont confuses **whether** the AAA has the authority to resolve the parties' dispute (which Metromont refers to

as "jurisdiction") with the *manner* in which it may do so (potential basis for modification or vacation of an award).

The Court begins by looking to the nature of the dispute about which TCGE contends arbitration is appropriate. The Sixth Circuit addresses the issue thus:

> Generally, there are two flavors of arbitration cases: labor arbitrations pursuant to collective-bargaining agreements and commercial arbitrations pursuant to other agreements. Review of the former class of cases is governed by federal labor law, such as the Railway Labor Act and the Labor Management Relations Act, … whereas the FAA [Federal Arbitration Act, codified at 9 U.S.C. § 1 et seq.] frames the review of the latter[.]

Samaan v. General Dynamics Land Systems, Inc., --- F.3d ----, 2016 WL 4536522, slip op. at 4 (6th Cir. Aug. 31, 2016).

Because this is a commercial law dispute, the FAA governs, and further, in enacting the FAA, Congress expressed a "federal policy favoring arbitration." Volt Info. Scis., Inc. v. Leland Stanford Junior Univ., 489 U.S. 468, 475–76 (1989). The authority of the AAA to adjudicate the parties' dispute is a matter of contract. The parties agreed that "[a]ny controversy or claim arising out of or relating to this Agreement shall, except to the extent modified by the mutual agreement of the parties be settled by binding arbitration[.]" [Doc. 29-1 at 4-5]. Accordingly, the parties contractually conferred the exclusive authority to adjudicate "any claim or controversy" to

9

the AAA for resolution by binding arbitration. Therefore, the question of *whether* the AAA possesses "jurisdiction" was decided by the parties at the time they executed their respective contracts. *How* the AAA accomplishes its adjudicatory task is a different question altogether and one governed by its rules, any subsequent agreement by the parties, and any pertinent contractual provisions construed in accordance with state law. See Volt, 489 U.S. at 475 (general state-law principles of contract interpretation apply to the interpretation of an arbitration agreement).

Metromont asserts, by way of an affidavit, that "no decision has been made by the arbitration panel that sufficient cause has been shown to extend the 30 day period, nor has the 30 day period been extended by the panel by any act or ruling[.]" [Doc. 34 at 13]. Metromont argues, in essence, that the arbitration panel's inaction precludes it from proceeding forward to render an award. TCGE responds with a proffer of emails sent by Metromont's counsel to the arbitration panel which TCGE contends demonstrates that any delay of the 30-day period is directly related to Metromont's requests for the same. [Doc. 36-8]. Whether the arbitration panel's failure to act in a timely manner, as Metromont argues, constitutes the panel's "exceeding the powers" granted it by the parties is a matter not ripe for the Court's consideration at this time. If, after the arbitration panel issues an award, Metromont's

contention ultimately proves true, Metromont's argument may be a basis warranting the vacatur of such award pursuant to 9 U.S.C. § 10(a)(4). Carroll v. Ferro, 179 N.C. App. 402, 406, 633 S.E.2d 708, 711 (2006) (defendants who object to the untimeliness of an award prior to the time the award is rendered preserve the issue for a later determination of whether the award should be vacated). For these reasons, Metromont's argument in opposition to the arbitration going forward on this ground is premature.

## ORDER

**IT IS, THEREFORE, ORDERED** that the motions filed by Plaintiff Tribal Casino Gaming Enterprise to stay all pending deadlines, to stay this matter pending arbitration, and to compel arbitration as to Defendant W.G. Yates & Sons Construction Company, Defendant Rentenbach Constructors Incorporated, and Defendant Metromont Corporation [Docs. 29; 31], are hereby **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is stayed pending the resolution of the parties' arbitration proceeding as ordered herein.

**IT IS SO ORDERED**.

Signed: September 26, 2016

Martin Reidinger
United States District Judge